E-FILED
Monday, 26 June, 2006  02:38:21 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD, ILLINOIS

| | | |
|---|---|---|
| LOREN B. BATSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-3189 |
| | ) | |
| JOANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

A Social Security case.

Cross-motions for summary judgment.

## I. BACKGROUND

Plaintiff Loren D. Batson (Batson) filed an application for

Disability Insurance Benefits ("DIB") on September 23, 2002, under the

Social Security Act (the "Act").  42 U.S.C. § 301, *et seq.* (2000).  Batson

alleges he has been disabled since January 1, 1996, due to contractures of

both hands, diabetes with neuropathy of his hands and feet, partial

amputation of his feet, and a torn right rotator cuff.

Batson's application for DIB was initially denied on March 25,
2003, and again upon reconsideration on May 9, 2003.  Batson met the
disability requirements of the Act on his alleged disability onset date, but
only satisfied them through June 30, 2002.  Therefore, in order to qualify
for DIB, he needed to establish a disability which commenced on or prior
to that date.  On May 21, 2003, Batson filed a hearing request which was
held on January 25, 2005.  Batson was not represented by counsel.  The
hearing was held in Springfield, IL before Administrative Law Judge John
M. Wood (the "ALJ").

At the time of the hearing, Batson was 52 years old, had a high
school education, and vocational training as an automobile technician.
His past relevant work included work as a janitor, sales clerk, and
maintenance supervisor.  Batson currently owns a firearms store, which
does not provide a substantial income.  He is divorced with two minor
children, is 6'2" tall and weighs approximately 170 pounds.

On December 21, 1995, Batson was admitted to the St. John's
Mercy Medical Center due to an infection of his right foot.  He had

previously undergone multiple surgeries to treat his feet, which were insensate due to diabetes.  Batson was seen by Craig E. Aubuchon, M.D. and diagnosed with cellulitis of his left foot, insulin dependant diabetes, and peripheral neuropathy.  At this time, Dr. Aubuchon summarized Batson's past surgeries, which included removal of the left tarsal, debridement of the callus on the distal aspect of the metatarsal where the toe was amputated, and laser surgery to both eyes for his diabetic retinopathy.

On January 10, 1996, Batson returned to Dr. Aubuchon where a large callous was found underneath Batson's medial sesamoid on the right foot.  At a follow-up visit on February 12, 1996, Dr. Aubuchon removed the sesamoid pressure by excising the right medial sesamoid.  On February 27, 1996, Batson was cleared to return to work.

In January and April 2000, Batson underwent surgery to repair Dupuytren's contractures of the right and left hands, respectively. Batson began physical therapy on February 22, 2000, at Shelby Memorial Hospital and was told to return to Dr. Aubuchon on an as-

3

needed basis.  In March and May 2000, Batson's physical therapist noted his complaints of pain were minimal.

On September 12, 2000, Batson returned to Dr. Aubuchon complaining of difficulty making a fist.  Dr. Aubuchon opined that the proximal interphalangeal joint seemed to be the main problem due to a flexion contracture on the small finger.  Batson returned to physical therapy on September 18, 2000, where he complained of not being able to achieve an open or closed fist.  The therapy continued until December 2000 when the physical therapist noted improved range of motion in both hands.

On March 4, 2003, Dr. Vittal Chapa performed a consultative examination of Batson.  Dr. Chapa found Batson was able to bear weight and ambulate without difficulty.  Batson's lower extremities revealed no edema, and his peripheral pulses were symmetric.  He had no specific motor weakness or muscle atrophy, good hand grip bilaterally, but had decreased pinprick sensation in the distal lower extremities.  He was able to perform fine and gross manipulations with both hands without

4

difficulty.  Dr. Chapa reported a 20 degree loss of flexion in Batson's right shoulder.

On March 18, 2003, James Graham, M.D., a state agency physician, reviewed the medical evidence of record, filled out a questionnaire regarding Batson's Residual Functional Capacity ("RFC") and opined that Batson could occasionally lift 20 pounds, frequently lift 10 pounds, and stand, walk and sit for 6 hours in an 8-hour workday, but he was limited in his ability to push and pull with his arms.  Dr. Graham further opined that Batson was limited in his ability to reach, but that he could perform unlimited handling, fingering, and feeling.  On May 9, 2003, a second state agency physician, William Conroy, M.D., reviewed the medical evidence of record and agreed with Dr. Graham's assessment.

In October 2003, Batson again returned to the hospital and was diagnosed with a torn right rotator cuff.  However, there was no evidence of retraction or significant atrophy.

On September 16, 2004, and November 3, 2004, Dr. Aubuchon examined Batson and found that he had decreased sensation in the mid-

calf distally and no sensation in part of both feet.  Dr. Aubuchon opined

that Batson could not be on his feet for extended periods of time due to

his partial foot amputation, his peripheral neuropathy, and risk for

breaking down his feet as he did years ago with multiple infections.  Dr.

Aubuchon further opined that Batson had a hard time working while

seated because he had difficulty using fine motor control with his hands

and because he had to move around for his insulin to work.

On January 25, 2005, Batson appeared before the ALJ and testified

without counsel.  He explained that he is divorced and has been renting a

room from his mother for the past four years.  Batson also testified that

he tries to stay off the roads, his sister drove him to the trial, but that he

drives to work at his firearms shop.  At his one-man shop, Batson sells

firearms and accessories Monday through Friday from 10:00 a.m. to 5:00

p.m.

At the shop, Batson also unpacks and shelves all of the products.

He explained that the products generally weigh about eight or nine

pounds, but sometimes ammunition can be a little heavier.  Everything in

the store is tailored to Batson's lifting abilities as most of the products are on one level.  At work, Batson uses a computer, but mostly uses a mouse to operate it because his hands are a little too stiff to use the keyboard. The work at the shop has worked well for Batson because he is able to sit for about thirty minutes and then move around to keep his insulin working.  Additionally, the shop is carpeted, helping his feet because concrete makes them very sore and leads to medical problems.  He also testified that he is able to take his son fishing two or three times a month in the summer, go to the movies, do some yard work and occasionally engage in target practice at the shooting range.  Batson testified that his hands are worse now than they were two years ago and now he even has trouble holding a bar of soap.

Dr. James Lanier, a vocational expert (VE), also testified at Batson's administrative hearing.  The VE was asked several hypothetical questions assuming the same age, education, and past relevant work experience as Batson, who was limited to light work[1] which only required occasional

---

[1]Light work is defined as involving lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds and may

pushing and pulling, with no climbing of ladders, ropes, scaffolding, no overhead reaching, and the ability to engage infrequent handling, fingering and feeling. The VE opined that such an individual would be able to do Batson's past relevant work of a sales clerk, but not the work of a janitor. The VE said that if the person needed a sit/stand option they would be limited to sedentary work. Further, with the sit/stand option removed and if fingering were limited to occasional fingering and feeling, the sales clerk position would not be suitable.

The ALJ then asked the VE whether there are a significant number of jobs in the economy which this person could perform. The VE testified such an individual would be able to perform several light jobs, most of which are in carpeted environments, including counter attendant (3,452 jobs), food preparation worker (3,159 jobs), retail salesperson (7,753 jobs) and receptionist/information clerk (3,327 jobs).

The ALJ concluded Batson did have severe impairments of status-post bilateral hand contractures, diabetes mellitus with neuropathy, and a

---

require a good deal of walking or standing, or it may involve sitting with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

torn rotator cuff, but Batson was not fully credible in his alleged

limitations because his daily activities were inconsistent with his

testimony.  The ALJ further found that Batson might not be able to

perform his past relevant work, but that he could perform a significant

number of jobs in the economy.

The ALJ denied Batson's claim on February 23, 2005.  Batson

appealed the ALJ's decision on May 13, 2005, and was denied by the

Appeals Council.  Thus, the ALJ's decision stands as the Social Security

Commissioner's (the "Commissioner") final determination.  Batson

appealed that decision in a timely fashion.  This Court has authority to

review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

Judicial review is limited in scope by § 405(g) of the Act, which

provides that the findings of the agency as to any fact, if supported by

substantial evidence, shall be conclusive.  <u>See</u> 42 U.S.C. § 405(g)

(incorporated by reference into Title XVI at 42 U.S.C. § 1383(c)(3)).

Substantial evidence is "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." Richardson v.

Perales, 402 U.S. 389, 401 (1971) (internal quotations omitted); see also

Diaz v. Chater, 55 F.3d 300, 305 (7th Cir. 1995).  The issue is not

whether the plaintiff is disabled, but rather whether the ALJ's findings are

supported by substantial evidence.  Jens v. Barnhart, 347 F.3d 209, 212

(7th Cir. 2003).  To determine whether substantial evidence supports the

ALJ's decision, the reviewing court is not permitted to substitute its

judgment for that of the Commissioner "by reconsidering facts, re-

weighing evidence, resolving conflicts in evidence, or deciding questions

of credibility."  Williams v. Apfel, 179 F.3d 1066, 1071-1072 (7th Cir.

1999) (internal quotations omitted).

## III.  Analysis

In determining whether a plaintiff is disabled, an ALJ uses the five-

step inquiry set out by the Act.  20 C.F.R. §§ 404.1520, 416.920; Briscoe

ex rel. Taylor v. Barnhart, 425 F.3d 345, 351-352 (7th Cir. 2005).  If the

ALJ makes a dispositive finding at any step, he does not review further.

20 C.F.R. § 404.1520(a).  Through step four, the plaintiff bears the

10

burden of proving the existence and the severity of any functional

limitations caused by his impairments; he also bears the burden of

proving that his impairments preclude him from performing his past

relevant work.  Young v. Secretary of Health and Human Services, 957

F.2d 386 (7th 1992).  At step five of the evaluation process, the burden

shifts to the agency to identify a significant number of jobs in the

economy that accommodate the claimant's residual functional capacity

(determined at step four) and vocational profile.    Bowen v. Acarid, 482

U.S. 137, 146 (1987).

The first step involves an inquiry into whether the claimant is

engaged in "substantial gainful activity."  20 C.F.R. § 404.1520; Briscoe,

425 F.3d at 351.  If the claimant is presently employed, he is not

disabled or qualified for DIB.  20 C.F.R. § 404.1520; Briscoe, 425 F.3d

at 352.  Second, the ALJ must determine whether the claimant has a

severe impairment.  20 C.F.R. § 404.1520; Briscoe, 425 F.3d at 351.

Where a severe impairment is found, the ALJ is to move on to step three

of the inquiry.  20 C.F.R. § 404.1520; Briscoe, 425 F.3d at 352.  Next, in

step three, the ALJ is to determine whether the claimant meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520; Briscoe, 425 F.3d at 352.  If the claimant meets any of the listings, he is qualified for DIB; however, if he does not meet any of the listings, the ALJ must proceed to step four of the inquiry.  20 C.F.R. § 404.1520; Briscoe, 425 F.3d at 352. Fourth, the ALJ must determine whether the claimant's RFC precludes him from performing all of his "past relevant work."  20 C.F.R. § 404.1520; Briscoe, 425 F.3d at 352.  If the claimant can perform any of his past relevant work, he is not qualified for DIB.  20 C.F.R. § 404.1520; Briscoe, 425 F.3d at 352.  Finally, the Commissioner must prove that there are a significant number of jobs in the national economy which the claimant can perform.  Where this burden is not met the claimant is eligible for DIB.  20 C.F.R. § 404.1520; Briscoe, 425 F.3d at 352.

## A.  Step One

The ALJ determined that Batson was not engaged in substantial

12

gainful activity at his firearms shop.  However, the ALJ determined that Batson's statements were generally credible, but not supported to a full extent.  Batson complains that the ALJ's credibility determination was erroneous.

First, Batson alleges the ALJ's determination shows a misunderstanding of his hand and feet limitations.  Batson argues that his limitations are not necessarily those of pain, but are limitations based on ability and fear of having to further amputate his feet.  In order to support the determination that a claimant's testimony is not credible, the ALJ must explain how the allegations are inconsistent with the medical findings in the record.  If the record provides adequate support for this finding, the ALJ's determination should be upheld.  Johansen v. Barnhart, 314 F.3d 283, 288 (7th Cir. 2002) (citing Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001)).  Here, the ALJ stated reasons for not finding Batson's testimony fully credible.  Specifically, the ALJ considered Batson's daily activities and medical evidence of recovery as inconsistent with his allegations.  The ALJ noted that Batson made a good recovery

from his hand surgeries in 2000 and has not required foot surgery since his alleged onset of disability.

Secondly, Batson believes the ALJ discredited his alleged physical limitations because he lives an active life and seeks medical treatment. Because the ALJ did not find Batson's statements fully credible, he placed more weight on Batson's activities rather than his testimony. Batson points to Social Security Regulation 96-7P ("SSR") which states that an individual's persistent attempts to receive medical treatment tend to point towards persistent pain and support that individual's credibility. SSR 96-7P, 1996 WL 374186 (S.S.A.). Rather than discredit Batson for his attempts to run a store and seek medical treatment, Batson believes his efforts should bolster his credibility. However, the ALJ was in the position to observe Batson at trial, and for this reason his determination is to stand unless it is patently wrong. Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995). The ALJ stated specific and compelling reasons for finding Batson was not fully credible (i.e. the inconsistency between Batson's daily activities and his alleged physical impairments). Thus, the

14

ALJ's determination that Batson was not engaged in any substantial

gainful activity is supported by substantial evidence.  20 C.F.R. §

404.1520; Briscoe, 425 F.3d at 351.

## B.  Step Two

The ALJ concluded Batson had severe impairments including post

bilateral hand contractures, diabetes mellitus with neuropathy, and a torn

rotator cuff.  The ALJ based this determination on records or testimony

from Dr. Aubuchon, Dr. Chapa, Dr. Graham, Dr. Conway, Batson's

physical therapist, and the VE.  Batson alleges that the ALJ failed to

properly consider all relevant medical evidence in determining the

severity of his impairments.

Batson points out that when a claimant is unrepresented by

counsel, the ALJ has a heightened duty to scrupulously and

conscientiously probe into, inquire of, and explore for all relevant facts.

Thompson v. Sullivan, 933 F.2d 581, 585-586 (7th Cir. 1991) (citing

Smith v. Secretary of Health, Edication and Welfare, 587 F.2d 857, 860

(7th Cir. 1978)).  Batson claims the ALJ failed to meet this requirement

15

by rejecting favorable medical evidence without re-contacting the treating physician.[2]   However, it is not the ALJ's duty to act as a claimant's counsel when he is unrepresented; rather, it is the ALJ's duty to thoroughly develop the facts.  <u>Sullivan</u>,  933 F.2d at 586.  The ALJ allowed testimony and considered medical records from even the irrelevant periods of time, and made his determination based on the progress Batson had made in regards to being able to move around on his feet and the improved range of motion in his hands noted by the physical therapist. There is no evidence that the ALJ did not fully develop the record.

Batson further alleges the ALJ failed to meet his duty to consider all relevant evidence by only considering the medical evidence prior to the date last insured.  Batson points out that SSR 83-20 states, "the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence

---

[2]Specifically, Batson believes the ALJ should have re-contacted Dr. Aubuchon to ask whether he thought Batson was disabled under the Act.  Because Dr. Aubuchon noted problems in the arms and legs, Batson believes Dr. Aubuchon would have testified he was disabled within the meaning of the Act.

concerning impairment severity." SSR 83-20, 1983-1991

Soc.Sec.Rep.Serv. 49, 1983 WL 31249.  Because Batson believes this

requires an ALJ to consider all medical history, he believes he is entitled

to a new trial.  Contrary to Batson's argument, SSR 83-20 applies only to

those cases where the ALJ has found a disability.  <u>Sheck v. Barnhart</u>, 357

F.3d 697, 701 (7th Cir. 2004); SSR 83-20, 1983-1991 Soc.Sec.Rep.Serv.

49, 1983 WL 31249.  Because there was no finding of disability, SSR 83-

20 does not apply to this case.  Therefore, the ALJ's determination of the

severity of Batson's combination of impairments is supported by

substantial evidence.  20 C.F.R. § 404.1520; <u>Briscoe</u>, 425 F.3d at 351-

352.

## C.  <u>Step Three</u>

The ALJ determined that Batson did not meet a specific disability

listing.  However, Batson argues that he met Listing 9.08 for Diabetes

Mellitus, part A, which states a person is disabled if he has "neuropathy

demonstrated by significant and persistent disorganization of motor

function in two extremities resulting in sustained disturbance of gross

and dexterous movements, or gain and station." 20 C.F.R. § 404,

Subpart P, App. 1, § 9.08A.  Because the impairments described by Dr.

Aubuchon include impairments of two extremities, the hands and feet,

Batson believes he meets this disability listing.  The problem with

Batson's argument is that it interprets Dr. Aubuchon's opinion too

broadly.  Batson must satisfy all elements of the impairment in the

listing.  See Maggard v. Apfel, 167 F.3d 376, 380 (7th Cir. 1999).  The

evidence prior to the date Batson was last insured, including records from

Dr. Aubuchon, does not show evidence of all of the elements in Listing

9.08(A).  Instead, Dr. Chapa's examination revealed Batson was able to

stand without difficulty and perform gross and fine manipulations with

both hands.  Additionally, the two state agency physicians opined that

Batson did not meet any listed disability.

Next, Batson argues that it was the ALJ's duty to ask Dr. Aubuchon

specifically whether he was disabled under one of the listings.  Batson

also points out that Dr. Aubuchon's observations are entitled to

conclusive weight when they are not inconsistent with evidence of the

record.  20 C.F.R. § 404.1527(d)(6); <u>Gudgel v. Barnhart</u>, 345 F.3d 467, 470 (7th Cir. 2003).  However, the ALJ was not required to re-contact Dr. Aubuchon to inquire whether he felt Batson specifically met any of the disability listings.  The ALJ may rely upon the state agency physician's opinion when the physician was designated to determine the medical equivalence of the alleged disability.  <u>Scott v. Sullivan</u>, 898 F.2d 519, 524 (7th Cir. 1990) (citing <u>Waite v. Bowen</u>, 819 F.2d 1356, 1370 (7th Cir. 1987)).  The ALJ only has the duty to re-contact a physician when evidence is inadequate to determine whether a claimant is disabled.  <u>See</u> 20 C.F.R. § 404.1512(e).  Because there was evidence Batson did not meet a disability listing, there was no need for the ALJ to contact Dr. Aubuchon.  For these reasons, the ALJ's decision is supported by substantial evidence.  20 C.F.R. § 404.1520; <u>Briscoe</u>, 425 F.3d at 352.

D.  <u>Step Four</u>

The ALJ found that Batson has the RFC to perform the physical exertional and nonexertional requirements of light work, with occasional pushing or pulling, no overhead reaching, no climbing of ladders, ropes or

scaffolds, but can do frequent manipulations with the hands such as handling, fingering, and feeling.  Batson argues this RFC finding was unfounded because he has undergone numerous hand surgeries and infections of both hands.  Batson alleges his hand limitations and rotator cuff injury would prevent him from engaging in light occupations which require lifting up to 20 pounds at a time with frequent lifting or carrying of objects weighing up to 20 pounds.  However, the ALJ's determination of Batson's RFC is supported by substantial evidence, such as the state agency physician's records and Batson's own testimony.  The state agency physician specifically opined that Batson could occasionally lift 20 pounds and frequently lift 10 pounds.  Batson additionally admitted in his testimony that he has to frequently lift up to 10 pounds at his firearms shop.  Batson's daily activities, including shooting firearms, yard work, and fishing also support the ALJ's RFC determination.

Also, Batson alleges the ALJ did not perform a function-by-function analysis of his impairments.  In making this determination, Batson contends the ALJ ignored his testimony about what he is able to do in his

firearms shop.  However, in reaching his conclusion, the ALJ reasonably

adopted the state agency physician's function-by-function findings in

determining Batson's RFC.  Batson's own daily activities of driving an

automobile, owning and operating a firearms shop, fishing, doing yard

work, going to movies, and engaging in target practice show he could

perform light work.  Thus, the ALJ's RFC finding is supported by

substantial evidence.  20 C.F.R. § 404.1520; Briscoe, 425 F.3d at 352.

## E.  Step Five

Finally, at step five, the ALJ determined that there are a significant

number of jobs in the economy which Batson can perform.  Batson

alleges the Commissioner did not meet his burden with respect to step

five.  First, Batson alleges that the ALJ did not include all of his

limitations in the hypothetical question posed to the VE.  An ALJ must

incorporate all relevant limitations which the claimant suffers when

eliciting information from a VE.  Young v. Barnhart, 362 F.3d 995, 1003

(7th Cir. 2004).  Batson argues that every job listed by the VE requires

frequent handling, reaching, and fingering.  Batson contends that he is

not physically able to do this work, and, therefore, the VE incorrectly opined that he could do such work.  However, the VE did not testify that Batson could perform all jobs as a counter attendant, food preparation worker, retail salesperson, and receptionist/information clerk.  Instead, the VE limited the response to those jobs which Batson could perform with his limitations.  Therefore, Batson's argument that all limitations were not considered is without merit.

Batson believes that he is disabled pursuant to Oates v. Discovery Zone, 116 F.3d 1161, 1171 (7th Cir. 1997), because he cannot meet the competitive demands of the workplace in that he cannot work at a normal pace.  Batson's reliance on Oates is misplaced.  The Oates decision is a Title VII case dealing with workplace discrimination and is not relevant to a DIB claim.  What is at issue here is whether the ALJ correctly determined Batson could perform a significant number of jobs in the national economy.  20 C.F.R. § 404.1520; Briscoe, 425 F.3d at 352.  The VE testified that there are 3,452 counter attendant, 3,159 food preparation, 7,753 retail salesperson, and 3,327

receptionist/information clerk jobs Batson could perform.  Based on the VE's testimony, the ALJ determined Batson could perform a significant number of jobs in the national economy.  The ALJ's finding is supported by substantial evidence.

Again, Batson argues that the ALJ failed to meet his burden of representing Batson, because he appeared without counsel, in asking the VE follow-up questions.  However, the ALJ met his burden of finding all relevant facts, imposed because Batson was unrepresented by counsel.  It is not the ALJ's burden to represent the claimant, as Batson argues, but rather to ensure all relevant facts have been revealed.  Sullivan, 933 F.2d at 586.  Substantial evidence supports that the ALJ made the necessary inquiries and the relevant facts were revealed.

## IV.  Conclusion

Ergo, the Plaintiff's Motion for Summary Judgement [d/e 10] is DENIED.  The Defendant's Motion for Summary Affirmance [d/e 15] is ALLOWED.  All pending motions are DENIED AS MOOT.

This case is CLOSED.

23

IT IS SO ORDERED.

ENTER: June 26, 2006

FOR THE COURT:

s/ Richard Mills
United States District Judge